**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 11, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MAXWELL STERLING JENSEN,

Defendant - Appellant.

No. 25-2163
(D.C. No. 5:25-CR-04750-MIS-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **MORITZ**, and **EID**, Circuit Judges.
_____

Maxwell Sterling Jensen is a defendant in two federal criminal prosecutions.

The first prosecution is in the Southern District of Texas.  The indictment alleges

various offenses related to the allegation that Jensen and a co-defendant have been

illegally importing crude oil into the United States since 2022.  The second

prosecution is in the District of New Mexico.  The indictment alleges that, during the

summer of 2025, Jensen and several co-defendants conspired to steal crude oil

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

directly from pipelines, which they later transported across state lines. The indictment thus charges Jensen and his co-defendants with interstate transportation of stolen property and related offenses.

This appeal arises from Jensen's District of New Mexico prosecution (although his Southern District of Texas prosecution remains relevant, as we will explain). Jensen challenges the New Mexico district court's decision to detain him pending trial. We have jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, and we affirm the district court's detention order.

## I.    BACKGROUND & PROCEDURAL HISTORY

Jensen lives in the Salt Lake City area. He was arrested in April 2025 based on the charges in the Southern District of Texas case. That court released him on bond but prohibited him from traveling outside the Salt Lake area, except for trips to the Southern District of Texas for court purposes.

In June 2025, a confidential source told an FBI agent that Jensen was organizing a scheme to steal crude oil from pipelines and store that oil (before selling it) at a location with large storage tanks in Carlsbad, New Mexico. The FBI relayed this information to a Bureau of Land Management special agent with experience in oil theft. He and others began surveilling the Carlsbad location and the trucks coming and going. The agents learned that at least one of those trucks made multiple trips to New Mexico oil fields and back to the Carlsbad yard in a manner consistent with oil-theft operations. Eventually other trucks transported oil from the Carlsbad location to a transfer station in Texas, where the oil was offloaded.

The agents also intercepted phone conversations between Jensen and the confidential informant. During those conversations, Jensen discussed the possibility of finding a buyer for the oil, paying the operator of the Carlsbad storage yard a percentage of the profits, and (ironically) avoiding law-enforcement sting operations.

In late August 2025, the government filed a criminal complaint against Jensen in the District of New Mexico, alleging interstate transportation of stolen goods. Federal agents then re-arrested Jensen in Utah and the government moved to keep him detained pending trial. The government argued Jensen is a danger to the community (because he continued to commit crimes while on pretrial release) and a flight risk (because of his demonstrated unwillingness to comply with court orders, and because his family has a home and bank account in the Bahamas).

Jensen elected to have the initial detention hearing (before the magistrate judge) in Utah. The magistrate judge concluded Jensen was not a flight risk given that "we have his passport and that kind of thing." Aplt. Suppl. App'x at 24. But the magistrate judge further concluded Jensen was a community danger because the Southern District of Texas granted him pretrial release and yet he continued to engage in criminal activity. The magistrate judge therefore ordered that Jensen be detained and transported to the District of New Mexico.

In the District of New Mexico, Jensen appealed the magistrate judge's detention order to the district court. The district court held a hearing at which Jensen largely argued that the evidence obtained through the confidential source actually related to an oil property that Jensen owns or operates in or around Odessa, Texas,

3

not to any scheme to steal the oil and store it in Carlsbad until it could be resold.

Following the hearing and further briefing, the district court issued a brief written

order stating that Jensen was both a community danger and a flight risk. The court

therefore ordered Jensen detained pending trial.

Jensen now appeals the district court's detention order.

## II.  LEGAL STANDARDS

To justify pretrial detention, "[t]he government must prove risk of flight by a

preponderance of the evidence, and it must prove dangerousness to any other person

or to the community by clear and convincing evidence." *United States v. Cisneros*,

328 F.3d 610, 616 (10th Cir. 2003) (citations omitted). In this appeal, we "accept the

district court's findings of historical fact . . . unless they are clearly erroneous." *Id.*

at 613. We review de novo the district court's application of the law governing

pretrial detention to those findings of fact. *Id.*

## III.  ANALYSIS

### A.  Section 3142(f)

The Bail Reform Act requires pretrial detention "[i]f, after a hearing . . . ,

[a] judicial officer finds that no condition or combination of conditions will

reasonably assure the appearance of the person as required and the safety of any other

person and the community." 18 U.S.C. § 3142(e)(1). Jensen argues, however, that

the government failed to justify a detention hearing in the first place. Specifically, he

points to § 3142(f), which states,

4

> The judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community—
>
> (1) upon motion of the attorney for the Government, in a case that involves [certain offenses not at issue here]; or
>
> (2) upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—
>
> > (A) a serious risk that such person will flee; or
> >
> > (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

According to Jensen, the government's motion for detention failed to satisfy either § 3142(f)(2)(A) or (B).  And because

- the magistrate judge concluded Jensen was not a flight risk, and

- the government's motion for detention never attempted to show Jensen posed a serious risk of obstruction of justice, witness tampering, etc.,

Jensen argues no detention hearing could be held.  In other words, he seems to be saying the magistrate judge should have denied the government's motion for detention and released him without a hearing.

Jensen never made this argument before the magistrate judge or the district court.  He raises it for the first time on appeal.  "When a litigant fails to raise an argument in district court, we typically treat that argument as forfeited.  And we will only reverse a district court decision on a forfeited argument if the appellant satisfies the standard for plain error."  *United States v. Barrera-Landa*, 964 F.3d 912, 918

(10th Cir. 2020) (citation omitted).  Jensen never acknowledges that he is raising this argument for the first time on appeal and does not argue for plain error.  "He has therefore waived [the argument]."  *Id.*

### B.    Section 3142(g)

Alternatively, Jensen argues the district court erred in its assessment of the various factors it must consider when deciding whether to order detention.  Those factors are:

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> . . .
>
>> (B) whether, at the time of the current offense or arrest, the person was . . . on other release pending trial . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

§ 3142(g).

Here, echoing § 3142(g)(2), the district court's detention order says "the weight of the evidence is strong."  Aplt. App. vol. 1 at 82.  Jensen argues the weight of the evidence is not strong because the district court received only "a bland admission," via counsel for the government, of Jensen's culpability.  Aplt. Bail Mem.

at 11.  Jensen refers to the following exchange between the district court and the assistant U.S. attorney:

> [AUSA]:  And then I would just add that at the time of his arrest, codefendant Rees [who operated the Carlsbad yard where the allegedly stolen oil was stored before being sold] admitted that he was working with Jensen.  He did not admit that the oil or the gas—the oil was stolen, but he did admit that he had been working with Jensen in Carlsbad.
>
> THE COURT:  All right.  But you have a codefendant who is admitting to all—not just that they were working together; you have some other codefendant admitting to the crime?
>
> [AUSA]:  Yes.  Other—other codefendants admitted that they knew it was stolen, but Mr. Rees denied knowing that it was stolen, but that he was working with Mr. Jensen.

Aplt. App. vol. 1 at 101–02.

Jensen argues as if this was the only relevant evidence before the district court.  But the district court also had information gathered through government surveillance (such as movement of oil trucks to and from the Carlsbad yard) and intercepted communications between Jensen and the confidential source.  Taken together with Jensen's status as an out-on-bond pretrial detainee when he allegedly committed the new crimes, we find on de novo review that risk of flight exists by a preponderance of the evidence and community danger exists by clear and convincing evidence.[1]

---

[1] Jensen also faults the government for proffering its evidence rather than putting on testimony.  But "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a detention] hearing."  § 3142(f).  To the extent proceeding by proffer nonetheless affects the weight of the evidence if not its admissibility, we still conclude the

## IV.     CONCLUSION

We affirm the district court's detention order.  We grant Jensen's unopposed motion to supplement the appendix (Dkt. No. 7).  We also grant Jensen's motion to seal volume 2 of the appendix (Dkt. No. 9).  That volume, which is currently sealed, shall remain sealed.

Entered for the Court

Per Curiam

---

government satisfied its burden to show flight risk and community danger.  We also note that Jensen does not re-raise the issue he argued most extensively in the district court, namely, whether the evidence established a connection between the allegedly criminal behavior and the Carlsbad yard, as distinct from allegedly legitimate activity related to an oil property in Odessa, Texas.